MARY F. VAN MATRE *v.* JOHN SANKEY *et al.*

and

HENRY L. GLOS *v.* CAROLINE C. SANKEY.

*Filed at Ottawa October 26, 1893.*

1. ADOPTION OF CHILD—RIGHT OF INHERITANCE—*who may adopt, under laws of Pennsylvania.* A statute of Pennsylvania (act of May 4, 1855,) authorized any person desirous of adopting any child as his or her heir, "to present his or her petition to the court in the county where he or she may be resident, declaring such desire," etc.: *Held,* following the construction given by the courts of that State, that the word "resident" includes both a permanent and a temporary resident.

2. SAME—*jurisdictional facts stated in petition.* A petition for the adoption of a child in the State of Pennsylvania alleged that the petitioner was a resident of California, and that he "was now a temporary resident" of a certain city and county of Pennsylvania; *Held,* that the allegation of a temporary residence, followed by proof of the same, was sufficient to give the court jurisdiction, and authorize the granting of an order for the adoption.

3. SAME—*application to revoke decree of adoption of a child.* An application to revoke an order or decree for the adoption of a child is properly made to the court of the State in which the decree was made, and its refusal to set the same aside when affirmed by the court of last resort in that State must be regarded as *res judicata,* or as conclusive upon the rights of the parties.

4. And when those courts have assumed jurisdiction to pass upon the merits of such application, it must be presumed that the proceeding was in conformity with the practice in such a case in that jurisdiction or State.

5. SAME—*notice to the child not essential.* Unless the statute so requires, no notice to the child is necessary in a proceeding had for its adoption. It will be sufficient if its guardian assents to its adoption.

6. SAME—*adopted child an heir not only in State of its adoption, but elsewhere.* A decree adopting a child is a declaration by competent authority operative to change its *status,* and, *ipso facto,* to render it that which the law declares it to be,—an heir of the person adopting,— and to make it capable of inheriting from him in all respects as if it were his own child born in lawful wedlock; and it may inherit property in other States than that in which the adoption was had, from its adopting parent.

536:33 LRA

7.  Under a statute of another State, which provides that an adopted child shall be decreed to take the name of the adopting parents, and "have all the rights of a child and heir of such adopting parents, and be subject to the duties of such child," a decree of adoption will establish instantly the relation of parent and child, and invest the child with the capacity of an heir-at-law of the person adopting it. The *status* of the child thus established by the *lex domicilii* will be recognized and upheld in every other State, unless such *status*, or the right flowing therefrom, is inconsistent with or opposed to the laws and policy of the State where it is sought to be availed of.

8.  SAME—*case distinguished.* In the case of *Keegan* v. *Geraghty,* 101 Ill. 26, a child adopted under the laws of Wisconsin sought in this State to take, not from the adopting parent, but from collaterals, and by representation. This court denied the right, for the reason that such taking was prohibited by and inconsistent with the law of this State, but recognized the right of the adopted child to inherit from the person adopting it.

9.  STATUTE—*of another State—construction by courts of such State.* Where a statute of another State has received a construction by the highest court of such State, such construction will, ordinarily, in the courts of this State, be adopted as binding and conclusive,—and this, although the examining court finds that, upon similar language in a statute within its own sovereignty, it would place a different or even a reverse construction.

10.  INFANTS—*domicile.* Every person, at birth, has his or her domicile in the place in which, at the time, the person on whom the infant is legally dependent is then domiciled, whether such domicile be at the place of its birth or elsewhere. This domicile of origin, which, in the case of legitimate children, is the domicile of the father, if living, and if not, that of the mother, continues to be the legal domicile of the child, unless changed by the parent during infancy, until he or she, upon attaining majority, or perhaps after being emancipated by the parents, acquire another.

11.  During dependency, the legal home or place of domicile follows that of its parents. If both parents be dead, the domicile of the child will be that of its origin, or, if that has been changed by the parents, that of its last surviving parent. The infant, of its own volition, can not change its domicile.

12.  JUDGMENT AND DECREE—*attacking collaterally—errors not affecting the jurisdiction.* Where a court of another State has jurisdiction of the persons of parties and of the subject matter by petition for the adoption of a child, it will have the power to adjudicate all the other questions involved, and its decree can not be impeached by showing irregularities or errors in the proceedings. In such case, the jurisdic-

tion of the court confers power upon it to judicially determine all questions involved, and incorporate its finding in a decree fixing the rights of the parties, and the *status* of each towards the other; and such decree will, unless attacked for fraud, be held valid and conclusive upon the parties and their privies, until reversed or set aside in the jurisdiction in which it was rendered.

13. JURISDICTION—*of Supreme Court of a State—presumption.* Where the highest court of a State affirms a decree on appeal, it will be presumed, in the absence of anything appearing to the contrary, that it had jurisdiction. By affirming, it necessarily determines its own jurisdiction.

14. TAX TITLE—*notice by publication to owner—when proper.* By section 216 of the Revenue law the purchaser of land for taxes, or his assignee, is required, among other things, as a condition precedent to his right to a deed, to serve the notice therein prescribed "on the owner of or parties interested in said land or lot, if they can upon diligent inquiry be found in the county." And it is further provided, that "if * * * the owners can not be found in the county," then such purchaser, or his assignee, shall publish such notice in some newspaper, etc.

15.  Personal service of the notice upon the owner, etc., is required when by diligent inquiry he or she can be found in the county, and resort to publication of the notice can avail, or be held to be sufficient to entitle the purchaser to a deed, only when the owner can not be there found. It is only when the presumption that the owner is an absentee from the county is raised by a failure to find him after diligent inquiry, that constructive notice by publication is authorized.

16. If the affidavit of the purchaser at a tax sale, or his assignee, shows a strict compliance with the statute, the act of the county clerk in executing a tax deed will be authorized, but if not, his deed will be void.

17. SAME—*sufficiency of affidavit to show diligent search for owner, etc.* An affidavit by a purchaser of land for taxes, made to entitle him to a deed, was as follows: "During the two months next preceding the last three months prior to the expiration of the time of redemption, affiant made diligent search and inquiry in said county for said S. S.," (the person in whose name assessed,) "and upon such diligent search and inquiry was unable to find him in said county," and that affiant "made diligent search and inquiry in said county for the owners of said premises, and upon such diligent search and inquiry was unable to find any of said owners, and upon such diligent search and inquiry affiant was unable to find the names of any of said owners, except," naming six persons: *Held,* that the affidavit failed to show a compliance with the letter or spirit of the statute.

18. The statute is silent as to where the "diligent inquiry" shall be made, but it must be of such a character that it will enable the person to swear that upon diligent inquiry the owner "can not be found in the county." The statement that the affiant has made diligent inquiry "in the county," and upon such diligent inquiry the owner can not be found, is not equivalent to the statement that upon diligent inquiry the owner can not be found.

19. "Diligent inquiry," as used in the statute, means such inquiry as a diligent man, intent upon ascertaining a fact, would usually and ordinarily make with diligence and in good faith to ascertain the truth. Inquiry in the county is proper, and ordinarily, perhaps, if sufficiently extended in good faith, all that would be required to constitute diligent inquiry.

20. SAME—*proceeding stricti juris.* The proceeding resulting in the execution of a tax deed is *stricti juris,* and no intendment in aid of it can be indulged. A strict compliance with the statute must be shown.

APPEAL from the Circuit Court of Cook county; the Hon. M. F. TULEY, Judge, presiding.

Mary F. Van Matre filed her bill in chancery in the Cook county circuit court, alleging that she and others named in the bill, including Caroline C. Sankey, were the heirs-at-law of Samuel Sankey, who died intestate in November, 1886, without issue or widow surviving him, and seized of certain lots and lands in said county, of which partition was sought among said alleged collateral heirs of said decedent. The bill also set up that appellant Henry L. Glos and others claimed some interest in certain of the lands under tax deeds which were alleged to be void, and were asked to be removed as clouds upon the title of complainant and her co-heirs.

Caroline C. Sankey answered the bill, denying that others were interested in said land and lots, and claiming title in fee to the whole, as heir-at-law of the said Sankey, and filed her cross-bill, alleging that by virtue of certain adoption proceedings in the court of common pleas of Lycoming county, Pennsylvania, she was adopted by said Samuel Sankey, deceased, on the 2d day of January, 1879, and that said Sankey having died without issue, and leaving no widow him surviving, his

estate descended to her as heir-at-law. The cross-bill also alleged that said Glos and others held certain tax deeds which were a cloud upon her title, and alleging in the cross-bill, as amended, certain defects therein, and praying that the same be removed as a cloud, etc.

Upon the issues joined upon the original and cross-bills, the court found and decreed in accordance with the prayer of the cross-bill; dismissing the original bill; finding that the tax deeds alleged were void, and upon the terms of payment by complainant in the cross-bill, of the taxes for which the tracts were severally sold, interest and costs, etc., removing them, severally, as clouds, etc. From the decree dismissing the original bill and quieting the title in the complainant in the cross-bill, Mary F. Van Matre appeals, and from so much of the decree as finds the several tax deeds void and clouds, etc., the said Henry L. Glos appeals.

The statute of Pennsylvania under which the adoption proceedings were had was as follows: "It shall be lawful for any person desirous of adopting any child as his or her heir, or as one of his or her heirs, to present his or her petition to such court in the county where he or she may be resident, declaring such desire, and that he or she will perform all the duties of a parent to such child; and such court, if satisfied that the welfare of such child will be promoted by such adoption, may, with the consent of the parents or surviving parent of such child, or, if none, of the next friend of such child, or of the guardian or overseer of the poor, or of such charitable institution as shall have supported said child for at least one year, decree that such child shall assume the name of the adopting parent, and have all the rights of a child and heir of such adopting parent, and be subject to the duties of such child, of which the record of the court shall be sufficient evidence."

It appears that Caroline C. Sankey was a minor of about the age of nine years; that her father and mother were both dead; that she and they, up to the time of their death, resided

in Lycoming county, Pennsylvania. It is not questioned that the court of common pleas had jurisdiction, in that State, of the adoption of children, authorized by the statute quoted. On the 11th day of November, 1878, Samuel Sankey filed in said court his petition, duly verified by his oath, in the words following:

"STATE OF PENNSYLVANIA, ⎰ In Court of Common Pleas of said County.
    *Lycoming County.* ⎱

"*To the Honorable the Judge of the Court of Common
    Pleas and of the Orphan's Court of the county aforesaid:*

"The petitioner, Samuel Sankey, shows to this honorable court that he is a married man, without children, now living in and a resident of the city and county of San Francisco, in the State of California, and that he is now a temporary resident at Williamsport, in the county aforesaid, and as such resident he is desirous of adopting Caroline Sankey, often and commonly called Carrie Sankey, as his heir-at-law, and your petitioner represents that he will perform the duties of a parent to said Carrie Sankey. And your petitioner further represents that said Carrie Sankey is an orphan, and is the daughter of Cyrus K. Sankey and Caroline, his wife, and that said Cyrus K. Sankey was the brother of your petitioner, and that he and his wife died intestate and wholly insolvent, and that your petitioner is next of kin to said Carrie Sankey, and as such he desires to adopt said orphan child, as stated above. Your petitioner further represents that all the brothers and sisters of said C. K. Sankey cheerfully consent that your petitioner shall adopt said child, who is now of the age of nine years, for the purpose of caring for her, educating her, and protecting her as his own child. Your petitioner shows to the court that the kinfolks on the part of the mother of said child are not so situated and circumstanced that they can care for said child. "Respectfully submitted.
                                SAMUEL SANKEY."

It also appears that L. G. Huling had before then been appointed guardian of said infant, and on November 11, 1878, a rule was granted on such guardian to show cause why the prayer of the petition should not be granted, returnable the following day, and a commissioner was appointed to take testimony. The record in that case shows, that on application of the guardian the time for taking testimony was twice extended by the court, and finally the following order was entered in said cause:

*"January 2, 1879.*

"The appointment of L. G. Huling, as guardian of Caroline C. Sankey, is revoked, and Samuel Sankey is allowed to adopt the minor child."

Then follows an order appointing Samuel Sankey guardian of the person and estate of said infant, minor child of Cyrus K. Sankey, deceased, and then follows the final order and decree, viz:

*"January 2, 1879.*

"Order and decree: Samuel Sankey, Esq., at present resident in said county of Lycoming, presented his petition to the said court declaring his desire to adopt Caroline C. Sankey, a minor child of Cyrus K. Sankey, deceased, and promising to perform all the duties of a parent, and confer upon her all the rights of a child and heir; and it appearing to the court that both parents of said minor child are dead, and that the uncles and aunts, as next of kin on the father's side of said minor child, consent and approve of said adoption, and after careful investigation and inquiry it appearing to the court that the interests and the welfare of the said minor child will be promoted by being adopted as the child and heir of the said petitioner, therefore it is ordered and decreed as follows: And now, to-wit, January 2, A. D. 1879, at an adjourned court held at Williamsport, in said county, it is ordered and decreed that Caroline C. Sankey, a minor child of Cyrus K. Sankey, late of said county, deceased, be and she is

hereby declared to be adopted by said Samuel Sankey, Esq., with all the rights of a child and heir of the said Samuel Sankey, and that she be also subject to all the duties of such child, and shall assume the name of the adopting parent, and to all intents and purposes have, enjoy and inherit all the rights and privileges and be subject to all the duties of a lawful child of said adopting parent, of which a copy of this record shall be sufficient evidence, agreeably to the provisions of the act of the General Assembly of Pennsylvania, approved May 4, A. D. 1855.

"By the court. JAMES GAMBLE, *P. J.*"

No appeal was taken from or writ of error prosecuted to reverse said decree, but after the death of Samuel Sankey, which occurred November 23, 1886, all the parties alleged to be collateral heirs of said Sankey, except said Caroline C. Sankey, by Aaron Wolf, their attorney in fact, and as administrator of the estate of Samuel Sankey, deceased, on November 3, 1887, filed a petition, entitled in the adoption proceeding above mentioned, in the court of common pleas of Lycoming county, Pennsylvania, setting forth as follows:

"First, that Samuel Sankey, the petitioner in said proceedings, was a resident and citizen of the State of California at the time of the filing of said petition, and afterwards, to the day of his death, to-wit, on the 23d day of November, A. D. 1886, and that the said Caroline C. Sankey is now about eighteen years of age, and now a resident of the city of San-Francisco, in the State of California. Second, the petitioner's appointment as attorney in fact, etc., the names and residences of the heirs, the petitioner's appointment as administrator, etc. Third, a copy of the decree of Hon. James Gamble, hereinbefore recited. Fourth, that the said order and decree were made on a petition signed by Samuel Sankey, and duly filed in said number and terms, wherein it is stated that the petitioner is a resident of the State of California, and

further, that the brothers and sisters of said Cyrus K. Sankey cheerfully consented to the adoption prayed for. Fifth, that your petitioner is informed and believes that he can establish by evidence, on the hearing in this case, that the brothers and sisters of Cyrus K. Sankey never consented to and had no knowledge of said application for adoption, except that the brother, James W. Sankey, may have had some knowledge thereof; and further, that the uncle of said Caroline C. Sankey, L. G. Huling, Esq., residing at the time of the application in the county of Lycoming, and who was the brother of the mother of the said minor child, and nearest of kin to said child on the side of the mother, objected most strenuously to the decree of adoption. Sixth, that your petitioner is informed and verily believes that the aforesaid order and decree of adoption were obtained by a misrepresentation of the facts of the case; and further, your petitioner is informed by counsel the court has no jurisdiction in the premises, the said Samuel Sankey not being a resident of the county of Lycoming, in the State of Pennsylvania, at the time of the application so as aforesaid made. Your petitioner therefore prays your honor to grant a rule to show cause why said order and decree should not be revoked. And we will ever pray, etc.

AARON WOLF, *Admr. and Att'y in fact.*"

A rule was granted thereon, and Caroline C. Sankey, by her guardian, filed answer and demurrer to the petition. The court sustained the demurrer, dismissed the petition, and discharged the rule to show cause, with costs. On appeal to the Supreme Court of that State the judgment of the court of common pleas was affirmed.

Mr. F. W. S. BRAWLEY, for the appellant Mary F. Van-Matre:

The adoption proceeding in Pennsylvania was only *in personam,* and heirs of Samuel Sankey are not precluded from inquiring into the jurisdiction of the court as relating to title

to real estate in Illinois.  Bigelow on Estoppel, (4th ed.) 287;
*Tucker* v. *Fisk*, 154 Mass. 577.

The same rule prevails did the record of the judgment set
out facts sufficient, if true, to show the court had jurisdiction,
and even then the judgment might be overturned.  *Thompson*
v. *Whitman*, 18 Wall. 457; *Knowles* v. *Gaslight Co.* 19 id. 58;
*Pennoyer* v. *Neff*, 95 U. S. 714; *Hawley* v. *Donoghue*, 116 id.
13; *Kingsbury* v. *Yniestra*, 59 Ala. 320; *Naplon* v. *Daton*, 71
Mo. 358; *Wright* v. *Andrews*, 130 Mass. 149; Bigelow on
Estoppel, (4th ed.) 288.

Adoption is a special statutory proceeding, and no presump-
tion is in favor of the court making it.   *Foster* v. *Waterman*,
124 Mass. 592; *Galpin* v. *Page*, 18 Wall. 371; *Shufeldt* v.
*Buckley*, 45 Ill. 223; *Johnson* v. *Kettler*, 84 id. 316; *White* v.
*Primm*, 36 id. 417.

The court had no jurisdiction, because Samuel Sankey, in
his petition, on his oath, shows that he was a resident of San
Francisco, California, at the time his petition was presented.
*(Barnard* v. *Barnard*, 119 Ill. 98.)   Mere absence from Cali-
fornia, his actual residence, did not constitute him a resident
of Pennsylvania.   *Pells* v. *Snell*, 130 Ill. 384.

Adoption is not authorized in Pennsylvania except in the
county where the petitioner was resident.   *Ross* v. *Ross*, 129
Mass. 263.

A transient visit of a person at a place does not make him
a resident there.   *Frost* v. *Brisbin*, 19 Wend. 14; *Casey's case*,
1 Ashm. 126; *Porter* v. *Miller*, 3 Wend. 330; *Willington* v.
*Whitechurch*, 4 B. & S. 107; *Wilkins* v. *Marshall*, 80 Ill. 74;
*Dale* v. *Erwin*, 78 id. 182; *Smith* v. *People*, 44 id. 16; *On
Yuen Hoy Co.* v. *Ross*, 8 Sawyer, 392.

A person seeking the benefit of a statutory proceeding must
bring himself strictly, not only within the spirit of the statute,
but its letter.  He can take nothing by intendment.  Suther-
land on Stat. Const. sec. 393, and cases cited, and secs. 454,

347, 392, 391; *Thompson* v. *Thatcher*, 6 Wheat. 126; *Stillwell* v. *Brammell*, 124 Ill. 338.

When the consent of a "next friend" is required, a next friend is important. *Commonwealth* v. *Leeds*, 1 Rawle, 194; *Booth* v. *Van Allen*, 7 Phil. 401.

There must have been notice given, and if given, the record should show it affirmatively. *Eddy* v. *People*, 15 Ill. 387.

The legislature can not dispense with all notice. *Stuart* v. *Parmer*, 74 N. Y. 188; *Gilmore* v. *Sapp*, 100 Ill. 304; *Long* v. *Thompson*, 60 id. 30; *Johnson* v. *Railway Co.* 23 id. 206; *Behrensmeyer* v. *Kreitz*, 135 id. 638; *Chase* v. *Hathaway*, 14 Mass. 222; *Jackson* v. *Thompson*, 41 Miss. 49; *Shufeldt* v. *Shufeldt*, 45 Ill. 224; *Galpin* v. *Page*, 18 Wall. 371; *Thompson* v. *Whitman*, id. 465.

The decision of a court on jurisdiction is not conclusive. Bigelow on Estoppel, (4th ed.) 228; Freeman on Judgments, sec. 123; *Donlin* v. *Hettinger*, 57 Ill. 351; *Goudy* v. *Hall*, 30 id. 116.

On the death of Samuel Sankey the title to his real estate, *eo instanti*, by law was thrown upon his heirs. *Hopkins* v. *McCann*, 19 Ill. 115.

An appeal does not lie from the common pleas court in Pennsylvania. *McClemmons* v. *Graham*, 3 Binn. 88.

Appeals are allowed by statute, and in no other way. *Hammond* v. *People*, 32 Ill. 469.

To be an estoppel, the parties and question must be the same, and the first court must have jurisdiction and power. *McCartney* v. *Osburn*, 118 Ill. 410.

The decision of a summary application is not *res judicata*. *Kanne* v. *Railway Co.* 33 Minn. 421; *Bennett* v. *Denny*, id. 533; *Simson* v. *Hart*, 14 Johns. 63; Freeman on Judgments, secs. 325, 326; Bigelow on Estoppel, (4th ed.) 50.

A technical estoppel is odious. *Wadhams* v. *Gay*, 73 Ill. 437; *Jeter* v. *Hewitt*, 22 How. 364.

Messrs. HAMLINE, SCOTT & LORD, for the appellee Caroline Sankey:

The decree is binding in Pennsylvania. If binding there, it is binding everywhere. *Colt* v. *Colt,* 111 U. S. 578; *Cheever* v. *Nilson,* 9 Wall. 108; *Christmas* v. *Russell,* 5 id. 302; *Nichols* v. *Nichols,* 25 N. Y. Eq. 63; *Kinnier* v. *Kinnier,* 45 N. Y. 540; *People* v. *Baker,* 76 id. 83; *Bimeler* v. *Dawson,* 4 Scam. 536; *Jones* v. *Warren,* 81 Ill. 348; *Renaud* v. *Abbott,* 116 U. S. 288.

This is particularly so with respect to judgments or decrees affecting the *status* of a person, they being in the nature of judgments *in rem,* which are binding on the whole world. *Roth* v. *Roth,* 104 Ill. 45; *Hood* v. *Hood,* 110 id. 463; *Hoes* v. *Van Alstyne,* 20 id. 202; *McDeed* v. *McDeed,* 67 id. 548; *Stark* v. *Ratcliff,* 111 id. 81.

Domicile is distinguished from residence. Domicile is defined to be a residence at a particular place, accompanied with positive or presumptive proof of an intention to remain there for an unlimited time. Wharton on Conflict of Laws, sec. 21; *Collinson* v. *Teale,* 4 Sawyer, 241.

While a man may have but one domicile he may have several residences, and his domicile may even be in one State and his residence in another. *Hayes* v. *Hayes,* 74 Ill. 312; *Way* v. *Way,* 64 id. 406; *Stout* v. *Leonard,* 8 Vroom, 495; *Frost* v. *Brisbin,* 18 Wend. 11; *Greene* v. *Greene,* 11 Pick. 415; *In the matter of Wrigley,* 8 Wend. 134; *Wells* v. *People,* 44 Ill. 40; *Supervisors* v. *Davenport,* 40 id. 197; *Crawford* v. *Wilson,* 4 Barb. 504; *Isham* v. *Gibbons,* 11 Bradf. 69; *Mayor* v. *Genet,* 4 Hun, 487.

The domicile of an infant without parents is the domicile of its last surviving parent. Jacobs on Domicile, sec. 256; *Lamar* v. *Micon,* 112 U. S. 452; *Holyoke* v. *Haskins,* 5 Pick. 20; *Lewis* v. *Costello,* 17 Mo. App. 593; *Louisville* v. *Sheeley,* 80 Ky. 71.

Neither the infant himself nor his guardian can change his domicile. Story on Conflict of Laws, sec. 506; Wharton on

Conflict of Laws, secs. 41, 42; *Lamar* v. *Micon, supra; Suc. of Lewis,* 20 La. Ann. 789; *Woodworth* v. *Spring,* 4 Allen, 322.

Notice to the child was not required, and hence was not necessary to the validity of the adoption, nor was it a jurisdictional fact. *Luppie* v. *Winans,* 37 N. J. Eq. 245; *Barnard* v. *Barnard,* 119 Ill. 92.

The court having jurisdiction of the subject matter and parties, and acting within its powers, the decree, even though erroneous, must stand until reversed in some direct proceeding. It is not open to collateral attack. It will be presumed that the court heard facts which required it to decree as it did. *Barnard* v. *Barnard,* 119 Ill. 92; *Young* v. *Lorain,* 11 id. 625; *Stowe* v. *Kimball,* 28 id. 107; *Bostwick* v. *Skinner,* 80 id. 147; *Fitzgibbons* v. *Lake,* 29 id. 177; *Spring* v. *Kane,* 86 id. 580; *Housh* v. *People,* 66 id. 181; *Henline* v. *People,* 81 id. 271; *Schnell* v. *Chicago,* 38 id. 390; *Moffit* v. *Moffit,* 69 id. 646; *Colt* v. *Colt, supra.*

A decree of adoption being for the benefit of the child adopted, the court will consider its welfare in any attack upon it. *Baker* v. *Strohm,* 33 Ill. App. 59; *Sewall* v. *Roberts, supra.*

The doctrine of *res judicata* embraces not only what has been actually determined in the former suit, but also extends to any other matter properly involved and which might have been determined in it. *Bennitt* v. *Mining Co.* 119 Ill. 9; *Litch* v. *Clinch,* 136 id. 425; *Riverside Co.* v. *Townsend,* 120 id. 9; *Kelly* v. *Donlin,* 70 id. 378; *Harmon* v. *Auditor,* 123 id. 122; *Neff* v. *Smith,* 111 id. 100; *Town of Lyons* v. *Cooledge,* 89 id. 529; *Rogers* v. *Higgins,* 57 id. 244; *Bailey* v. *Bailey,* 115 id. 557; *Stickney* v. *Goudy,* 132 id. 231.

A decision upon a demurrer, which, however, has clearly gone to the merits of the case, is an effectual bar to further litigation. Bigelow on Estoppel, 33.

An estoppel of record, arising out of a judgment which determines the *status* of a person, is operative and conclusive as to all the world. *Hood* v. *Hood,* 110 Mass. 465.

A judgment of a court of last resort can not be attacked collaterally in that or any other State. Bigelow on Estoppel, 22; *Lucas* v. *San Francisco,* 28 Cal. 591; *Rountree* v. *Turner,* 36 Ala. 555.

The full faith and credit required to be given in each State to the judicial proceedings of other States will prevent any evidence to contradict the facts which show a jurisdiction, if such appear in the record. *Hall* v. *Williams,* 9 Pick. 232.

Mr. H. S. Mecartney, for the appellant Glos.

Mr. Justice Shope delivered the opinion of the Court:

The question presented by the appeal of Mary F. Van Matre is, whether there was a legal adoption of Caroline C. Sankey by Samuel Sankey, in his lifetime, in Pennsylvania, by which, under the laws of that State, she became his heir-at-law. It is insisted that there was no legal adoption, for the reason that the court was without jurisdiction to enter the decree—first, because said Samuel Sankey was not, at the time, a resident of the county of Lycoming and State of Pennsylvania, where the same was entered, within the contemplation and meaning of the statute of that State; and second, that it does not affirmatively appear from the record that said proceedings were had with notice to the child proposed to be adopted. Many minor and collateral objections made may be appropriately considered under these headings.

The question of whether Samuel Sankey was a resident of Lycoming county, Pennsylvania, within the meaning of the statute, was directly presented in the proceedings for adoption, and was determined adversely to the contention of appellant. It will be seen from the foregoing statement that the verified petition presented, alleged that he was a resident of the city and county of San Francisco, California, "and that he is now a temporary resident at Williamsport," in the said county of Lycoming, Pennsylvania. By the recitals in the decree of

adoption it appears that the court found he was such temporary resident,—that he was "at present resident in said county of Lycoming,"—and the court necessarily held that such temporary residence in the county gave it jurisdiction to hear and determine the adoption proceedings.

Again, the same question was raised and determined in the application made by this appellant and other collateral heirs to that court to revoke the order and decree of January 2, 1879. It was there expressly alleged that the court was without jurisdiction, for the reason that said Sankey was a resident of the State of California at the time of the application for adoption. In passing upon that question, that court, in an able opinion by Cummins, presiding judge, said: "The court is asked to set aside this decree of adoption on two grounds: First, want of jurisdiction; second, misrepresentation of facts. The jurisdiction of the court in this case must appear in the petition presented by Samuel Sankey to the court, asking for the decree of adoption." And after setting out the petition in substance, and its verification, it is further said: "It is as a 'temporary resident' at Williamsport, in the county of Lycoming, that the petitioner invokes the powers of the court of that county.   *   *   *   Does the word 'resident,' as used in the act of May 4, 1855, *supra*, include a temporary resident?" And after showing that the word "resident" has received various interpretations, it is said: "The purpose of our Adoption act is to promote the welfare of the child to be adopted, and any one desirous of adopting a child may invoke the power of the court of the county in which he or she may reside. It does not require that the petitioner shall be a citizen, a freeholder or an inhabitant, nor does it require that he shall reside any certain length of time. It does not say that he shall be a permanent resident, which has been held to be synonymous with inhabitant, nor that he may be a temporary resident, which has been held synonymous with a sojourner. After a careful examination of all the authorities cited, (they

are too numerous to be classified or referred to here,) I am of opinion that the word 'resident,' as used in the act of May 4, 1855, includes both a permanent and a temporary resident, and the jurisdiction of the court is therefore sufficiently set forth in the petition." An appeal having been prosecuted to the Supreme Court of Pennsylvania from the judgment rendered by the court of common pleas, that court, after setting out in full, and, in effect, adopting, the opinion of the learned judge of the common pleas court, affirmed the order sustaining the demurrer to the petition to revoke the decree of adoption. *Appeal of Wolf,* 13 Atl. Rep. 760.

By the act of May 4, 1855, of the State of Pennsylvania, as will be seen in the foregoing statement, it is provided that if any person is desirous of adopting any child as his or her heir, or as one of his or her heirs, it shall be lawful to present his or her petition to the proper court "in the county where he or she may be a resident," etc. We are now called upon by the same parties who sought to have the decree of adoption set aside in the courts of Pennsylvania, where it was made, and who claim title under and through said Samuel Sankey, to place upon the statute of that State a construction differing materially from that put upon it by those courts, and to hold that Samuel Sankey was not, at the time of the adoption, a resident of Lycoming county, Pennsylvania, within the meaning of said statute, and that therefore the court was without jurisdiction to enter the decree. Neither in the petition of the collateral heirs filed in the court of common pleas of Lycoming county, Pennslnania, nor in the original bill filed in this case, is the allegation of the original petition filed by Samuel Sankey, that he was, at the time of the application for adoption, "a temporary resident at Williamsport," in the county of Lycoming, etc., controverted. It will thus be seen that the question there and here presented was whether a temporary residence was sufficient to authorize the adoption under the statute of Pennsylvania.

Where a statute of a State has been given construction by the highest tribunal of the State, such construction will, ordinarily, in the courts of a sister State, be adopted as binding and conclusive. (*Hunt* v. *Hunt,* 71 N. Y. 217; *Gilchrist* v. *Company,* 21 W. Va. 115; *Gunn* v. *Howell,* 35 Ala. 144; *McDeed* v. *McDeed,* 67 Ill. 545; *Kingsley* v. *Kingsley,* 20 id. 203.) The same rule has been recognized by the Supreme Court of the United States. (*Walker* v. *Harbor Comrs.* 17 Wall. 648; *Bailey* v. *Magwire,* 22 id. 215; *Gilpin* v. *Page,* 18 id. 350; *Seacomb* v. *Railroad Co.* 23 id. 108; *Burgess* v. *Seligman,* 107 U. S. 20; *Bucher* v. *Cheshire Co.* 125 id. 555.) And this, although the examining court finds that, upon similar language in a statute within their own sovereignty, they would place a different or even reverse construction. (*Supra.*)

·  We should here notice the objection that the decree of adoption was entered without the consent of the parties required by the statute. The petition filed by Samuel Sankey alleged that the minor was the child of his brother; that her father and mother were dead; that all the sisters and brothers of her deceased father consented to the adoption, and that her kindred on the mother's side were not so situated or circumstanced that they could properly care for the child. The record discloses that evidence was taken, and it must be presumed that the court found the material allegations of the petition to be true. By the act, as will be seen, the court is required to be satisfied that the interests and welfare of the child will be promoted by the adoption. The guardian, the legality of whose appointment by the court is not questioned, contested the adoption proceedings, and the court, in what must be presumed to be the exercise of its lawful powers, removed him previous to the entry of the decree, and appointed said Samuel Sankey as guardian in his stead. The court had, in the contest made by the former guardian, "after careful investigation and inquiry," found all the facts necessary to justify the decree. It found that the uncles and aunts of the

child on its father's side, as next of kin, approved and consented, and that the interests and welfare of the child would be promoted by the adoption, and it was expressly held by the court, on the application of the collateral heirs before mentioned, that "it was not necessary that all of the uncles and aunts should consent." Moreover, as said by that court: "On the day the decree was entered, Huling's appointment as guardian was revoked, and Samuel Sankey, the petitioner in the adoption proceeding, was appointed guardian of the child, and not only consented, but sought the adoption of his ward."

By reference to the statute set out in the foregoing statement it will be seen that the adoption may be had with the consent of the guardian. While it might have conformed more nearly to the practice in this State, after the appointment of the petitioner as guardian, to have formally appointed a guardian *ad litem* or "a next friend," who, under the statute, could have given the required consent, the failure to do so would, at most, be an irregularity, only, which would not subject the decree to collateral attack. At most, it could render the adoption voidable, only. (*Peak* v. *Shasted*, 21 Ill. 137; *Willard* v. *Marmon*, 116 id. 653.) This question was necessarily before the Pennsylvania courts, both in the original proceeding and upon the petition to revoke and set aside the decree of adoption, and it was held that sufficient was shown upon the record to warrant the entry of the decree in the common pleas court. (*Appeal of Wolf, supra.*) Moreover, the courts of Pennsylvania, in the later proceeding, held, as we think, properly, in considering this and similar contentions, that Samuel Sankey, if living, would be, and the parties now seeking to disregard that decree, claiming under and in privity with him, were, estopped from questioning the validity of the adoption. We do not find it necessary to pursue or determine that matter here. It having been determined, upon direct proceeding, by the court of last resort of the State in which the decree was rendered, that the court of common pleas

had jurisdiction to enter the decree, we are required to give
·it full faith and credit. The Pennsylvania Court of common
pleas having jurisdiction of the persons of the parties and the
subject matter, as was necessarily held by the Supreme Court
of that State, had power to adjudicate the questions involved,
and its decree can not be impeached by showing irregularity
in its procedure, or that errors intervened in its rendition.
(*Kinnier* v. *Kinnier*, 45 N. Y. 542.) Jurisdiction conferred
power upon the court to judicially determine the questions
involved, and incorporate its determination in a decree fixing
the rights of the parties,—the *status* of each toward the other;
and it will, unless attacked for fraud, be held valid and con-
clusive upon the parties and their privies until reversed or set
aside in the jurisdiction in which it was rendered. 2 Story's
Const. Lim. 1313; *Cheever* v. *Wilson*, 9 Wall. 108; *Nichols*
v. *Nichols*, 25 N. J. Eq. 63; *People* v. *Barker*, 76 N. Y. 83;
*Adams* v. *Adams*, 154 Mass. 295; *Jones* v. *Warner*, 81 Ill.
348; *Roth* v. *Roth*, 104 id. 35.

It is contended that the decision of the Supreme Court of
Pennsylvania in *Wolf's Appeal, supra,* can not be regarded as
an authoritative exposition of the law, for the reason, as it
is contended, that no appeal lies from the court of common
pleas to that court, and that the appeal of Wolf, therefore,
conferred no jurisdiction. There is nothing in this record or
the adjudications of that court, as we understand them, to
warrant the contention. The statutes of that State upon the
subject were not proved or introduced in evidence, and·in ren-
dering its judgment of affirmance the court necessarily deter-
mined its own jurisdiction. It was expressly held in *Appeal
of Lewis,* 127 Pa. St. 127, by that court, that upon appeal
from a decree of adoption rendered by the court of common
pleas that court could "review the record," and doing so and
.finding no error affirmed the decree. Here, every question
presented arose upon the record, and the question determined
was, whether the matters alleged in the petition for vacation

were sufficient to require the setting aside of the original decree. It being the court of last resort, it must be presumed, in the absence of anything appearing to the contrary, that it would not adjudicate unless it had jurisdiction to render judgment in the cause. Its jurisdiction must, therefore, upon this record, be presumed. *Davis* v. *Packard*, 8 Pet. 323; Cooley's Const. Lim. 508; 2 Black on Judg. 896; *Horton* v. *Critchfield*, 18 Ill. 133; *Dunbar* v. *Hallowell*, 34 id. 168; *Osgood* v. *Blackmore*, 59 id. 261.

Nor, in view of this decision of the Pennsylvania court, will it be necessary to determine whether the court of common pleas was exercising a special statutory jurisdiction, and therefore the rules applicable to courts of inferior jurisdiction apply or not. Sufficient appearing upon the face of the record, as held, the jurisdiction must, in any event, be maintained.

Nor were the proceedings for revocation of that summary character which will not be regarded as *res judicata*, or as conclusive upon the rights of the parties. The application was made by all of the persons interested in the revocation of the decree of adoption and who are here seeking to avoid it, and against the adopted child. All were before the court. Every material fact now insisted upon as sufficient to avoid the decree was there presented and its sufficiency challenged by the demurrer to the petition. The court, upon their petition, every material averment of which was admitted by the demurrer to be true, assumed jurisdiction to determine the question upon the merits and did so, and, as we have seen, the Supreme Court of the State, adopting the reasoning of the opinion of the judge of the lower court, affirmed the judgment. The application was properly made to the courts of that State, (*Rae* v. *Hurlburt*, 17 Ill. 572, *Ambler* v. *Whipple*, 139 id. 311,) and those courts having assumed jurisdiction to pass upon the merits, it must be presumed that the proceeding was in conformity with the practice in such cases, in that jurisdiction.

It is urged that the court of common pleas of Lycoming county, Pennsylvania, was without jurisdiction, and its decree is void for the reason, first, that the child adopted was in Illinois, and out of the jurisdiction of that court; and second, that it is not shown that there was notice to the child proposed to be adopted. It is said this question was not presented by the petition for revocation of the decree, and was not therefore passed upon by the courts therein. Without pausing here to determine this latter contention, it may be again said that the question of the jurisdiction of the court to render the decree was necessarily before the court in the later proceeding, and must have been determined. But if this were otherwise, the contention is without merit. Caroline C. Sankey, at the date of the adoption, was of about the age of nine years. She was born in Lycoming county, Pennsylvania, where her father and mother were domiciled, and which was also the domicile of her parents, severally, at the time of their decease. There is substantial uniformity of decision that an infant can not, of its own volition, change its domicile. (Jacobs on Domicile, secs. 223-229; see cases cited in note 1, p. 866, 5 Am. and Eng. Ency. of Law.) The rule of law is universally recognized, that every person, at birth, has his or her domicile in the country or place in which, at the time, the person on whom the infant is legally dependent is then domiciled, whether it be at the place of the birth or elsewhere. This domicile of origin, which in case of legitimate children is the domicile of the father, if living, and if not, that of the mother, continues to be the legal domicile of the child, unless changed by the parent during infancy, until he or she, upon attaining majority, or perhaps after being emancipated by the parents, acquires another. During dependency the legal home or place of domicile follows that of its parents, and it is well settled that if both parents be dead the domicile of the child will be that of its origin, or, if that has been changed by the parents, that of its last surviving parent. (Story on Conflict

of Laws, 46-506; 2 Kent's Com. *227, note b; *Wadsworth* v. *Spring,* 4 Allen, 332; *Lewis* v. *Costello,* 17 Mo. App. 593; 5 Am. and Eng. Ency. of Law, title "Domicile.") The infant had, as already seen, been committed, by the court of common pleas, to the care and custody of a guardian, who was amenable to that court for the discharge of that duty. The guardian was duly notified, appeared, and contested the adoption. The statute of Pennsylvania does not require that the child shall be personally present in court, or that it be notified of the proceeding. Notice to it would in nowise add to or detract from the power given or the duty imposed by law upon the court of determining the question of adoption in the interest and for the welfare of the child. It could neither consent nor object to the power exercised by the State, through the instrumentality of the court, over its person. The power and duty of the State to care for the estates and persons of infants, so far as necessary for their protection and education, have been generally recognized. It is, in cases of this sort, of the same character of jurisdiction over them that is exercised by courts of chancery, which is an exercise of the prerogative of the sovereign, springing from its power and duty, as *parens patriæ,* to guard the interests of dependents, and protect and control them. (2 Story's Eq. Jur. 1333-1341; *Petition of Ferrier,* 103 Ill. 367.) The precise point arose, upon a similar statute, in *Gibson Appellant,* 154 Mass. 378. The decree of adoption was made "without notice, by publication or otherwise," to the child, "her parents, relatives or next of kin." It was held, the statute not requiring it, no notice was necessary, the guardian of the child appearing and consenting to the adoption. That the child was domiciled in Lycoming county, Pennsylvania, and, for the purposes of adoption, under jurisdiction and control of the court to which the State had committed the performance of its duty, and the exercise of its power in such cases, does not seem to admit of doubt.

It is insisted that the decree of adoption, although valid in the State of the domicile of the child, and, *pro tempore,* of the person adopting her, can not affect the descent of real property in Illinois, and *McCartney* v. *Osburn,* 118 Ill. 403, is cited as supporting that contention. This is a misapprehension of the case cited, as well as of the effect of the decree of adoption. In the *Osburn case* the courts of Pennsylvania had given construction to clauses of a will as affecting property situated in that State, and the question was, whether the parties were estopped, by the construction there given, in proceedings in this State affecting real property in this State. It was held that they were not, and that the courts of each State must construe the will, as affecting lands within their respective jurisdictions, for themselves, and might do so as if the several properties were devised by separate wills. The real property passed under the law of its *situs,* and not by the law of the domicile of the testator, and therefore the will must be construed under the laws of this State, and that construction control its disposition. That case was expressly distinguished from *Hanna* v. *Read,* 102 Ill. 596, and like cases, in which it is held that the right to re-litigate is concluded by the former adjudication.

The proceeding in this case was in the nature of a proceeding *in rem,* the purpose being to change the *status* of the child in her relation to said Samuel Sankey. The decree of adoption was a declaration by competent authority, operative to change her *status,* and, *ipso facto,* to render her that which she was declared to be,—the heir-at-law of Samuel Sankey,—and capable of inheriting from him, in all respects, as if she had been his child born in lawful wedlock. (2 Black on Judgments, 792, *et seq.*) The statute under which the adoption proceedings were had, provides that the child shall be decreed to take the name of the adopting parents, "and have all the rights of a child and heir of such adopting parents, and be subject to the duties of such child." The decree, by force of this statute,

established, *eo instanti* its rendition, the relation of parent and child, imposed upon the parties the reciprocal duties and obligations of that relation, and impressed upon and invested the child with the rights and qualities of a child and heir-at-law of Samuel Sankey. This we understand to be the construction of the statute by the courts of that State. (*Wolf's Appeal, supra.*) The *status* of appellee having been established under and existing by virtue of the *lex domicilii,* is to be recognized and upheld in every other State, unless such *status,* or the rights flowing therefrom, are inconsistent with or opposed to the laws and policy of the State where it is sought to be availed of.

This court, in *Keegan* v. *Geraghty,* 101 Ill. 26, quoted with approval the language of Mr. Justice Gray in *Ross* v. *Ross,* 129 Mass. 243, as follows: "It is a general principle that the *status* or condition of a person, the relation in which he stands to another person, and by which he is qualified or made capable to take certain rights in that other's property, is fixed by the law of the domicile, and this *status* and capacity are to be recognized and upheld in every other State, so far as they are not inconsistent with its own laws and policy," and the principle announced, with its limitation, was expressly approved. (*Roth* v. *Roth, supra,* and cases cited.) In the *Keegan case, supra,* the child, adopted under the laws of Wisconsin, sought in this State to take, not from the adopting parent, but from collaterals and by representation. This court expressly recognized the *status* established in Wisconsin, so far as it related to the right to inherit from the parent by adoption, because consistent with the laws of this State relating to descent to adopted children, but denied the right to take by representation from collateral kindred of the parent, for the reason that such taking was prohibited by and inconsistent with the laws of this State. (Rev. Stat. sec. 1, par. 5, chap. 39.) No inconsistency with our laws or their policy exists in this case. The rights claimed under and by virtue of the adoption in Penn-

sylvania are those, and none other, that would exist upon the creation of the same artificial relation in this State.

We are of opinion, therefore, that upon the death of Samuel Sankey without other children, the estate in Illinois descended to appellee, Caroline C. Sankey, as his child and heir-at-law, and that the court correctly decreed in dismissing the original bill.

It remains to consider the errors assigned by appellant Glos. He claimed title, as alleged and admitted, under four several tax deeds to lots 58 and 59, in Mather and Taft's addition, .etc., being parcel of the property in controversy. The cross-bill, as amended, alleged the invalidity of these deeds, and set out various defects in the proceedings preceding their issue, and prayed that they be severally removed as clouds, etc. To sustain these allegations, the cross-complainant, among other things, introduced in evidence the affidavits made under section 217 of the Revenue act by the purchaser or his assignee, as compliance with the requirements and conditions prescribed by section 216 of that act, in respect of each of said tax deeds. These several affidavits, in the respect here considered, are the same, and the objection is common to all.

By section 216 the purchaser or his assignee is required, among other things, as a condition precedent to his right to a deed, to serve the notice therein prescribed "on the owner of or parties interested in said land or lot, if they can upon diligent inquiry be found in the county." And it is further provided that "if  *  *  *  the owners can not be found in the county," then such purchaser or his assignee shall publish such notice in some newspaper, etc. It is clear that personal service of the notice upon the owner, etc., is required when by diligent inquiry he or she can be found in the county, and resort to publication of the notice can avail or be held to be sufficient to entitle the purchaser or assignee to a deed, or to authorize the clerk to execute the same, only when the owner can not, upon such inquiry, be there found. This pro-

vision requiring personal service if to be found in the county, was, as said in *Wilson* v. *McKenna*, 52 Ill. 43, "intended for wise purposes,—to prevent owners of land from being deprived of their titles except upon actual notice, if practicable to give it." And it is only when the presumption that the owner is an absenteee from the county is raised by a failure to find him after diligent inquiry, that constructive notice by publication is authorized.

By the next section of the statute (217) the purchaser or assignee, by himself or agent, is required to make and file with the proper officer authorized to execute the deed, an affidavit of compliance with the conditions of section 216, stating particularly the facts relied on as such compliance. It is upon this affidavit the clerk acts. If it shows strict compliance with the statute, his act in executing the deed will be lawful; if it does not, it will be unauthorized, and the deed void. (*Wilson* v. *McKenna, supra; Wisner et al.* v. *Chamberlin*, 117 Ill. 568; *Stillwell* v. *Brammell*, 124 id. 339.) So much of these affidavits as is important here is as follows: That "during the two months next preceding the last three months prior to the expiration of the time of redemption from said sale, affiant made diligent search and inquiry in said county for said S. Sankey," (the person in whose name assessed,) "and upon such diligent search and inquiry was unable to find him in said county," and that affiant "made diligent search and inquiry *in said county* for the owners of said premises, and upon *such* diligent search and inquiry was unable to find any of said owners, and upon *such* diligent search and inquiry affiant was unable to find the names of any of said owners, except," etc., naming six persons. There is no other statement in the affidavit that aids the part quoted. We are of opinion that the affidavit failed to show compliance with the letter or spirit of the statute. The proceeding resulting in the execution of the tax deed is *stricti juris*, and no intendments in aid of it can be indulged. The act is silent as to

36—148 Ill.

where the "diligent inquiry" shall be made, but it must be of such character that it will enable the party to swear that upon diligent inquiry the owner "can not be found in the county." The statement that the affiant made diligent inquiry "in the county," and upon *such* diligent inquiry the owner can not be found, may be, and is, very different from the statement that upon diligent inquiry the owner can not be found in the county. The first statement may be true, and still, by resorting to those means within the power of the party, and which an ordinarily diligent person would resort to, the place where the owner could be found in the county might be readily known. "Diligent inquiry," as used in the statute, means such inquiry as a diligent man, intent upon ascertaining a fact, would usually and ordinarily make,—inquiry with diligence and in good faith to ascertain the truth. Undoubtedly, inquiry in the county is proper, and ordinarily, perhaps, if sufficiently extended in good faith, all that would be required to constitute "diligent inquiry." It is apparent that this affidavit may be entirely true,—*i. e.*, that upon diligent inquiry "in the county" the owners could not be found,—and yet the purchaser, or his assignee, or his agent, making the affidavit, have known that without expense, inconvenience or delay he could readily ascertain the place "in the county" where the owner could be found, by inquiry just across the county line, or in some locality easy of access. Prudent and diligent men, who in good faith are seeking to find, pursue those lines of inquiry open to them which may lead to the ascertainment of the fact, and exercise at least ordinary diligence therein, and for aught that is shown, if the person making this affidavit had with ordinary diligence pursued inquiry where the fact might have been found, he would have found the owners in the county. As before said, the statute does not prescribe that diligent inquiry in the county will suffice, but requires that the inquiry shall be diligent, so that, *prima facie*, at least, the party sought can not be found in the county, so that the party making the

proof can state that upon diligent inquiry he can not be found in the county.

Other objections are made to the tax deeds, some applying to all and others to the deeds severally, which we do not deem it necessary to discuss. The objection already examined, which we regard as fatal to their validity, applies to all of them, and was sufficient to authorize the decree setting them aside on the terms imposed.

Finding no error in this record requiring a reversal, the decree of the circuit court is affirmed.

*Decree affirmed.*