IN THE MATTER OF THE ADOPTION OF SUSAN ———,
AN INFANT.

DELMAR, J. The petitioners who reside in Union County have petitioned this court for permission to adopt Susan ——, an infant, who has resided with them for more than a year prior to the filing of the petition. Susan is an illegitimate child; she was born in Hackensack. Her mother has been a resident of Bergen County ever since she was born having made her home with her parents. The child was born in the early part of 1942. Her mother surrendered her to the Child Welfare Department of the County of Bergen ten days after her birth, at which time she executed a form wherein she signified her consent to the child's adoption. The petitioners acquired her custody the following day for the purpose of adopting her with the understanding between them and the Child Welfare Department that if the child did not make the proper adjustment in the petitioner's home she would be returned to said department. Upon the filing of the petition the Child Welfare Department was appointed next friend of the said infant and has given its consent to the adoption by the petitioners.

The only question presented by the foregoing set of facts is whether the Bergen County Orphans Court has jurisdiction to decree said adoption.

An adoption proceeding is a proceeding in the nature of a proceeding *in rem,* and in order to give an adoption decree extra-territorial effect it is necessary that the court making the decree should have jurisdiction over the subject-matter, which is the status of the child. *Lister* v. *Lister,* 86 *N. J. Eq.* 30 (at *p.* 35); 97 *Atl. Rep.* 170; *Van Matre* v. *Sankey,* 148 *Ill.* 536; 36 *N. E. Rep.* 628; 23 *L. R. A.* 665; 1 *R. C. L.* 602; 2 *C. J. S., tit. "Adoption of Children," p.* 369, § 1; *Portman* v. *Mobley,* 158 *Ga.* 269; 123 *S. E. Rep.* 695; *Glansman* v. *Ledbetter,* 190 *Ind.* 505; 130 *N. E. Rep.* 230; *In re Finkenzeller's Estate,* 105 *N. J. Eq.* 44; 146 *Atl. Rep.* 656; *affirmed,* 107 *N. J. Eq.* 180; 151 *Atl. Rep.* 905.

Under *R. S.* 9:3–1; *N. J. S. A.* 9:3–1, it is required that the petition be addressed to the Orphans Court of the county "wherein petitioner or any minor child may reside." The petitioners resided in Union County at the time of the filing of the petition and the child actually resided with them.

The meritorious question is whether such residence even though perhaps only of a temporary nature is the residence determining the jurisdiction of the court in this case.

I have been unable to find any judicial construction of the statute in question, and I have not been favored by any brief by the attorneys for the petitioners. I am confronted at the outset to such cases as *Van Matre* v. *Sankey, supra,* holding that under the Adoption Act of Pennsylvania, the word "residence" means actual residence as distinguished from domicile. See, also, *Milligan* v. *McLaughlin,* 94 *Neb.* 171; 142 *N. W. Rep.* 675; 46 *L. R. A.* (*N. S.*) 1134, for a full discussion of the subject. *Appeal of Wolf,* 13 *Atl. Rep.* 760; 10 *Sadler* 139 (*Pa.*); *Dabaghian* v. *Kaffafian,* 71 *N. J. L.* 115; 58 *Atl. Rep.* 106; (Practice Act, *N. J. S. A.* 2:27–19), deciding that the word "reside" means actual residence at the time of the institution of the suit.

To the contrary a long line of cases construing various statutes wherein the word "residence" has been held to mean legal residence or domicile, for instance, *Russell's Case,* 64 *N. J. Eq.* 313; 53 *Atl. Rep.* 169; *Hess* v. *Kimble,* 79 *N. J. Eq.* 454; 81 *Atl. Rep.* 363; *King* v. *King,* 74 *N. J. Eq.* 824; 71 *Atl. Rep.* 687; *Hervey* v. *Hervey,* 56 *N. J. Eq.* 166 (at *p.* 174); 38 *Atl. Rep.* 767; *Rinaldi* v. *Rinaldi,* 94 *N. J. Eq.* 14; 118 *Atl. Rep.* 685; *Brown* v. *Brown,* 112 *N. J. Eq.* 600; 165 *Atl. Rep.* 643; *Cadwalader* v. *Howell,* 18 *N. J. L.* 138 (Election Law). Also *Woodwards App.,* 81 *Conn.* 152; 70 *Atl. Rep.* 453, and *Greene* v. *Willis,* 47 *R. I.* 375; 133 *Atl. Rep.* 651, denying rehearing, 47 *R. I.* 251; 132 *Atl. Rep.* 545; *Johnson* v. *Smith,* 94 *Ind. App.* 619; 180 *N. E. Rep.* 188.

Except to point out that the word "reside" or "residence" as used in a statute may mean either actual residence or place of abode or else legal residence or domicile little help can be obtained from an examination of the numerous decisions on the question.

*R. S.* 9:3–3; *N. J. S. A.* 9:3–3, requires that the petition shall state the *residence* of the petitioner and of the child.

*R. S.* 9:3–5; *N. J. S. A.* 9:3–5, forbids granting of a decree of adoption unless the child has been *living continu-*

*ously in the home of the petitioner or petitioners* for not less than one year (six months in the exercise of the court's discretion) and requires the testimony of a witness other than the petitioner that the child has *resided* in the home of the petitioner for the required time.

At first blush it would seem that the word "reside" as used in the Adoption Act meant the actual residence or place of abode of the child; however, it should be noted that *R. S.* 9:3–5 was an amendment passed in the year 1938 and that the requirements relating to the residence of the child for six months or one year were not a part of the original act, the author of which contemplated that the petitioners could reside in one county and that the child could reside in another county.

Although it would be natural to assume that the legislature in enacting a law would use the same word twice to convey the same meaning twice, nevertheless, this assumption is not necessarily correct. In the case of *Brundred* ads. *Del Hoyo,* 20 *N. J. L.* 328, it was pointed out by the Supreme Court that the legislature used the word "resident" in two different sections of the Attachment Act—in one section to mean actual residence or inhabitance, and, in the other, to mean legal residence or domicile. The original adoption statute should be construed as of the time when it was enacted, and the amendment as of the time when it was enacted in the light of the result sought to be achieved which was merely to prevent hasty, and, perhaps, ill-advised adoptions. *Book's Will,* 89 *N. J. Eq.* 509 (at *p.* 510); 105 *Atl. Rep.* 878.

Statutes permitting adoption are in derogation of the common law and must be strictly construed. *Book's Will, supra; Elmer* v. *Wellbrook,* 110 *N. J. Eq.* 15; 158 *Atl. Rep.* 760. However, this rule does not require that an unnatural construction be placed upon the language used by the legislature. At the time when the Adoption Act was originally enacted it was common practice for petitioners to adopt a child immediately upon obtaining its custody, and, in some cases, even before that, in which latter cases petitioners and the infant would ordinarily have different places

of residence. Since an infant is not *sui juris* and therefore has no ability to determine its own residence, it follows that a child lives wherever those in whose custody it may be may happen to take it to dwell for the time being. If the word "reside" as used in section one means where the infant may live, then it would be possible to confer jurisdiction on any Orphans Court of the state by simply taking the child to live in the county in which the Orphans Court is petitioned to act, or even for a non-resident to bring a child into this state to be adopted here and then taken out; a construction opening the doors to fraud. A person may have more than one residence, but he can have only one domicile. *Stout* v. *Leonard*, 37 *N. J. L.* 492 (at *p.* 495). It is therefore a stricter interpretation of the word "reside" as used in that section to say that, it means legal residence or domicile.

The domicile of every person at its birth is the domicile of the person on whom it is legally dependent, whether that is at the place of birth or elsewhere. So the domicile of the father (if the parents are married) is ordinarily the domicile of the child. *Blumenthal* v. *Tannenholz*, 31 *N. J. Eq.* 194; *Russell's Case*, 64 *N. J. Eq.* 313; 53 *Atl. Rep.* 169.

The domicile of an illegitimate child is determined by that of its mother. *Sudler* v. *Sudler*, 121 *Md.* 46; 88 *Atl. Rep.* 26; 49 *L. R. A.* (*N. S.*) 860; *Undy* v. *Undy*, *L. R.* 1, *H. L. Sc.* 441-9, in *Ruling Cases*, 782.

It is the general rule that an unemancipated infant cannot of its own volition acquire a new domicile. *Russell's Case*, 64 *N. J. Eq.* 313; 53 *Atl. Rep.* 169; *Van Matre* v. *Sankey*, *supra*; *Sudler* v. *Sudler*, *supra*.

A domicile once acquired continues until a new one is acquired. *Guggenheim* v. *Long Branch*, 80 *N. J. L.* 246; 76 *Atl. Rep.* 338; *affirmed*, 83 *N. J. L.* 628; 84 *Atl. Rep.* 21.

At the time of her birth Susan's mother was legally domiciled in Bergen County. It therefore follows that Susan acquired a domicile in Bergen County and retains that domicile until she acquires a new one. The surrender of her custody to the Child Welfare Department by her mother might well be an act establishing a new domicile: it is not necessary to decide that point because the Child Welfare Department

of Bergen County is a corporation, having its home and principal office in the City of Hackensack, within the county. The surrender of the custody of the child by that society to the petitioners established a temporary residence for the child which cannot become permanent until this court has decreed the adoption by the petitioners at which time the child will acquire a new domicile. *In re Benton*, 92 *Ia.* 202; 60 *N. W. Rep.* 614; *Cox* v. *Boyce*, 152 *Mo.* 576; 54 *S. W. Rep.* 467; *Note* 49 *L. R. A.* (*N. S.*) 863; *Shick* v. *Howe*, 137 *Ia.* 249; 114 *N. W. Rep.* 916; 14 *L. R. A.* (*N. S.*) 980; *Finley* v. *Brown*, 122 *Tenn.* 316; 123 *S. W. Rep.* 359; 25 *L. R. A.* (*N. S.*) 1285; *Van Matre* v. *Sankey, supra.*

I therefore conclude that the words "where any minor child may reside" as used in *R. S.* 9:3–1 means "where any minor child may have its domicile" and that Susan ————, having her domicile in Bergen County this court has jurisdiction and that a decree of adoption should be signed.