MARY L. WOODWARD'S APPEAL FROM PROBATE (MARY L. WOODWARD *vs.* THE MERIDEN TRUST AND SAFE DEPOSIT COMPANY, ADMINISTRATOR, ET ALS.).

Third Judicial District, New Haven, June Term, 1908.

BALDWIN, C. J., HAMERSLEY, HALL, PRENTICE and THAYER, Js.

Under General Statutes, § 697, this court will take judicial notice of the public statutes of another State, and correct a mistake or oversight of the trial court in stating the law of that jurisdiction.

In 1863 the statutes of Wisconsin in relation to the adoption of children under fourteen, did not require the consent of the child's parents to the proposed adoption, if they had left the State and gone to parts unknown, but provided that in such case the county judge might appoint some discreet and suitable person to act as the next friend of such child who should give or withhold such consent. *Held:*—

1  That an adoption of a child in 1863 pursuant to this provision, upon a petition duly instituted by domiciled inhabitants of that State, was valid in so far as it conferred upon such child the same rights in respect to inheritance and succession that a natural child of the adopting parents would have possessed, as authorized by other sections of the Wisconsin statute.

2.  That even if the child's natural parents could have contested the validity of the Wisconsin decree upon the ground that it deprived them of their parental rights without notice, it did not necessarily follow that after the child had become twenty-one and these rights had thereupon terminated, the decree must be held null and void in so far as it conferred upon the adopted child the right to inherit from its adopting parents.

Woodward's Appeal.

3. That inasmuch as the statutes of this State, also, provided a method for the adoption of children, there was no reason of public policy which in this case would prevent our courts from giving effect to the Wisconsin decree in respect to the right of the adopted child to inherit from its adopting parents, who had since become domiciled here; and therefore the adopted child was entitled to share in the distribution of the intestate estate of her deceased father-by-adoption, in preference to the latter's surviving sister.

It is competent for a State to create the status of adoption in the case of an infant actually within its limits who is in need of its protection, provided it can be reasonably afforded by transferring the child to the charge of him who seeks to assume toward it the responsibilities of a parent.

The distinction between adoption as a status under the Roman law, and the statutory status established by legislation in this and other States retaining the English common law, stated and explained.

A valid judgment cannot be set aside because the trial court may have given an insufficient reason for its rendition.

The Wisconsin decree was entitled as in the "County Court" and under its seal, but the petition on which it was based was addressed to the "County Judge" and the decree was signed by him as such judge. *Held* that it was to be presumed after a lapse of forty years that the county judge disposed of the cause in accordance with the law and practice of his State.

Argued June 4th—decided August 3d, 1908.

APPEAL from a decree of the Court of Probate for the district of Meriden accepting and approving the distribution of the estate of John O. Noxon of Meriden, deceased, taken to and tried by the Superior Court in New Haven County, *Roraback, J.;* facts found and judgment rendered confirming said probate decree, and appeal by the original appellant. *No error.*

John O. Noxon, a resident of Meriden in the probate district of Meriden, died at the city of New York November 28th, 1905. Thereupon his widow, Martha C. Noxon, petitioned the Court of Probate for said district that letters of administration be granted to the Meriden Trust and Safe Deposit Company, representing in her petition that her husband, a resident of Meriden, died November 28th, 1905, possessed of estate remaining to be administered, leaving her, his widow, and as his only heir at law and

next of kin, his sister, Mary L. Woodward, a resident of Elizabeth, New Jersey, and leaving no will. Letters of administration were granted to said corporation.

On May 6th, 1907, the Court of Probate passed an order appointing distributors of said estate: The order recited that upon the settlement of the administration account there remained for distribution in the hands of the administrator $14,958.77 in personal estate; that Martha C. Noxon, widow, then (at the date of the order) deceased, and Elizabeth E. B. Potter of San Bernardino, California, were heirs at law, or their representatives; and "therefore ordered that said estate be distributed to and among said heirs, according to law," and appointed three distributors to distribute said estate. On May 10th, 1907, said distributors reported that they had distributed said estate, amounting to. $14,958.77, one third to Martha C. Noxon, widow, late of Meriden, deceased, and two thirds to Elizabeth E. B. Potter of San Bernardino, California. On the same day (May 10th, 1907) the court passed an order accepting and approving said report.

On June 26th, 1907, the said Mary L. Woodward made application to the Court of Probate, alleging that she was heir at law and next of kin of said John O. Noxon, that she was a nonresident of the State who was not present and who did not have legal notice to be present at the time when said orders were made, as of record would appear, that she was aggrieved thereby, "and now within twelve months next after said orders and decrees were made," moved an appeal to the Superior Court from said orders. On the same day (June 26th, 1907) the Court of Probate passed an order allowing said appeal, and directing a prescribed notice of said appeal to be given to said administrator and to each of the persons interested, namely, the said Elizabeth E. B. Potter, Mr. and Mrs. Veile, residents of New York, and William R. Hervey, a resident of California. Upon the entry of said appeal the appellant, Mary L. Woodward, appeared, and the said administrator appeared as appellee.

The pleadings, in so far as they affect the questions decided upon the appeal, are substantially as follows:—

The reasons of appeal state that the appellant is a sister of John O. Noxon, the deceased, and that the deceased died intestate, leaving a widow but no children or the representatives of children. The attorneys for the appellees filed an answer to the reasons of appeal, admitting that the appellant is a sister of the intestate, and that the intestate died leaving a widow, but denying that the intestate left no children or representatives of children. It alleged, also, as a special defense, that on November 6th, 1863, the said John O. Noxon and his wife, the said Martha C. Noxon, by proceedings duly had and a decree of adoption duly made and entered in the County Court in and for Milwaukee County, in the State of Wisconsin, adopted a minor child, named Elizabeth E. Burton, and that the Elizabeth E. Burton so adopted is the Elizabeth E. B. Potter mentioned in the order of distribution, and that by virtue of said decree of adoption, and the law of Wisconsin, said Elizabeth E. B. Potter is, for the purposes of succession and inheritance, the child of John O. Noxon, and as such child entitled to inherit his property in this State under the laws of this State. The appellant filed a reply to the special defense, denying that Elizabeth E. B. Potter was on November 6th, 1863, adopted by said John O. and Martha C. Noxon, by proceedings duly had in the Wisconsin court, and denying that by virtue of the decree of said court, and the laws of Wisconsin, she became, for the purposes of succession and inheritance, the child of the intestate; and further averring that said alleged adoption was and is wholly void, that the Wisconsin court had no jurisdiction over the parties to said alleged adoption proceedings, and that under the laws of Wisconsin on November 6th, 1863, said Wisconsin court had no jurisdiction over said alleged proceedings.

The judgment of the trial court recites that said Mary L. Woodward having filed her reasons of appeal, the parties were at issue to the court as on file, and the court, having

heard the parties, finds the issues for the appellee, and thereupon adjudges that the orders of the Court of Probate appealed from are valid, and that the decree of said court be confirmed, and that the appellee, the said administrator, recover of the appellant its costs.

It appears from the finding for appeal to this court, that the appellee, for the purpose of proving the alleged adoption, produced a copy of the record of the adoption proceedings in the Wisconsin court, duly exemplified, and produced no other evidence of the proceedings attending said adoption.

This record consists of, first, the petition addressed to the Hon. Albert Smith, county judge of the county of Milwaukee. The petition represents (1) that the petitioners are, and for four years last past have been, inhabitants of said Milwaukee; (2) that Elizabeth E. Burton, an infant two years of age, the child of Henry E. and Ellen J. Burton, his wife (the said Henry being a brother of the petitioner Martha C. Noxon), has resided with the petitioners for more than seven months last past, during which time the child has been wholly dependent on the petitioners for support, and has received no support from its parents; (3) that the child was brought into Wisconsin by its parents some time before the month of March last, and both parents have now left the State and have not resided in the State for more than six months last past; (4) that the petitioners are now wholly ignorant of the whereabouts of said Henry E. or Ellen J. Burton, and when last heard from they were living separate, and neither pretending to make any provision for said child; (5) that the child has no legal guardian, and no kindred within the State except the petitioners; (6) that the petitioners are fit to bring up the child suitably, and deem it fit and proper that it should be adopted by them; they therefore petition for leave to adopt the child, and that an order may be made (upon proper consent being given) that such child be deemed for all legal purposes the child of the petitioners, and that some suitable person be appointed to act in the

proceedings as the next friend of such child. This peti-
tion was verified by oath of the signers before a notary
public.

The second feature of the record is the order appointing
a next friend.   The order recites that the parents of the
said child reside without the State of Wisconsin, and that
said child has no legal guardian, and no kindred within
the State except the petitioners; and thereupon orders
that Oliver P. Wolcott of Milwaukee be appointed to act
as the next friend of Elizabeth E. Burton, and to give or
withhold his consent to her adoption.   The order is dated
on the same day as the petition, and is signed, " Albert
Smith, County Judge."

Next and third is the order purporting to change the
status.   This order is as follows : —

" State of Wisconsin,  }
Milwaukee County,  }  ss. County Court, in Probate.

" In the matter of the adoption of Elizabeth E. Burton,
etc.

" On reading and filing the petition of John O. Noxon
and Martha C. Noxon, his wife, of the city and county of
Milwaukee, State of Wisconsin, praying for leave to adopt
Elizabeth E. Burton, the child of Henry E. Burton and
Ellen J. Burton, his wife, and Oliver P. Wolcott having
been appointed by this court to act as the next friend of
the said child, the parents of the said child being nonresi-
dents of the State of Wisconsin, and the said Wolcott hav-
ing given his consent, in writing to the said adoption.

" And this court having become satisfied of the identity
and relationship of the said parties, and that the petitioners
are of sufficient ability to bring up the child and furnish
suitable nurture and education, having reference to the
degree and condition of its parents, and that it is fit and
proper that such adoption shall take effect; it is there-
fore

" Ordered and decreed that from and after the date of
this order, such child shall be deemed and taken to all legal

intents and purposes to be the child of the said petitioners, as by the statute in such case made and provided.

"In testimony whereof I have hereunto set my hand [SEAL] and affixed the seal of the County Court of said County this 6th day of November, A. D. 1863.

"Albert Smith, County Judge."

The following statute laws relating to adoption appear in the public statutes of Wisconsin as printed by authority of that State. Revision of 1858, pp. 388, 389, chapter 49, Adoption of Children, provides as follows:—

"Section 1. Any inhabitant of this State may petition the county judge, in the county where he or she may reside, for leave to adopt a child not his or her own by birth.

"Section 2. If both or either of the parents of such child shall be living, they, or the survivor of them, as the case may be, shall consent to such adoption; if neither parent be living, such consent may be given by the legal guardian of such child; if there be no legal guardian, nor father nor mother, the next of kin of such child within the state may give such consent; and if there be no such next of kin, the county judge may appoint some discreet and suitable person to act in the proceedings as the next friend of such child, and give or withhold such consent."

"Section 5. If upon such petition, so presented and consented unto, as aforesaid, the county judge shall be satisfied of the identity and relations of the persons, and that of the petitioner, or in case of husband and wife, that the petitioners are of sufficient ability to bring up the child, and furnish suitable nurture and education, having reference to the degree and condition of its parents, and that it is fit and proper that such adoption shall take effect, he shall make an order setting forth the said facts, and ordering that from and after the date of the order, such child should be deemed and taken to all legal intents and purposes, the child of the petitioner or petitioners."

The other sections of the chapter forbid the adoption of a child of fourteen years without its consent; require that

the spouse of any petitioner, lawfully married, shall join in the petition; provide that a child " so adopted as aforesaid " shall be deemed, for the purposes of inheritance and succession, custody of the person and right of obedience, and all other legal consequences and incidents of the natural relation of parents and children, the same as if born in lawful wedlock of the adopting parents; provide that the natural parents shall be deprived by such order of adoption of all legal rights whatsoever, as respects such child, and such child shall be freed from all legal obligations, as respects its natural parents; and provide that any petitioner, or child by its next friend, may appeal to the Circuit Court from such order of the county judge, in like manner as appeals may be taken from the order of the County Court.

In 1862, § 2 of chapter 49 was amended so as to read as follows: " If both or either of the parents of such child shall be living, they, or the survivor of them, as the case may be, providing they live in this state, shall consent to such adoption; but if they do not live in this state, or are gone to parts unknown, or if neither parent be living, then such consent may be given by the legal guardian of such child. If there be no legal guardian, the next of kin of such child, within the state, may give such consent; and if there be no such next of kin, the county judge may appoint some discreet and suitable person to act in the proceedings, as the next friend of such child, and give or withhold such consent." General Laws of Wisconsin, 1862, p. 153, Chap. 253.

In 1864, chapter 253 of the General Laws of 1862 was repealed, and it was enacted that section two of chapter forty-nine of the revised statutes is hereby amended, so as to read as follows : " Section 2. No such adoption shall be made without the consent, in writing, of such of the parents of said child as may be living, unless it shall appear to the judge that either of the parents has abandoned the child or gone to parts unknown, when such consent may be given by the parent having the charge and care of the child. And in case where neither of the parents is living, such

consent may be given by the guardian, if such child has any, and if there be no guardian, such consent may then be given by any of the next of kin of such child, residing in this state; and if there be no such next of kin, or if such next of kin be unknown, such consent may be given by some suitable person to be appointed by such judge; and in case of a child not born in lawful wedlock, such consent may be given by the mother." General Laws of Wisconsin, 1864, p. 351, Chap. 278.

In 1865, chapter 278 of the Laws of 1864 was amended, by altering the amendment in that Act of § 2 of chapter 49 of the Revision of 1858. General Laws of Wisconsin, 1865, p. 115, Chap. 132.

The Revision of 1878 (pp. 1149, 1150) repeals the Revision of 1858, and expressly repeals chapter 253 of the Laws of 1862, chapter 278 of the Laws of 1864, and chapter 132 of the Laws of 1865. The law regulating adoption as enacted in this Revision is contained in §§ 4021, 4022 *et seq.*

It further appears in the finding, that the trial court, in the absence of any testimony that the adoption was ever questioned by any one, deemed it reasonable to assume that all the parties directly interested in the judgment of adoption acquiesced in and fully performed all their obligations under it.

Upon this state of facts the trial court reached the conclusion that the decree of distribution appealed from was valid, stating in the finding, as one reason for reaching that conclusion, that without taking time to discuss the adoption proceedings, the court was satisfied that the appellant in this case was estopped from questioning the validity of those proceedings.

*Cornelius J. Danaher*, for the original appellant (plaintiff).

*George A. Fay* and *George A. Clark*, for the appellee (defendant, Meriden Trust and Safe Deposit Company, Administrator).

HAMERSLEY, J.   Probate jurisdiction is within the jurisdiction of the Superior Court, but can be invoked only upon appeal from the Court of Probate, in which court original jurisdiction of this nature is vested.   Upon such appeal the Superior Court acts as a probate court, exercising its powers and duties in respect to the matter defined in the appeal.   In this case the matter before the Court of Probate, and the Superior Court upon appeal, was the duty imposed by statute upon the Court of Probate, of distributing the personal estate of an intestate in accordance with the directions of our statutes of distribution.   In the performance of that duty, it is the duty of the court to ascertain who are the distributees prescribed by our statute. *Mack's Appeal*, 71 Conn. 122, 128, 41 Atl. 242.   If, in this case, by reason of an error of the court in performing its statutory duty of ascertaining the statutory distributees, the order of distribution does not distribute the estate, or any portion of it, to a person to whom the statute says it shall be distributed, then the Court of Probate erred in making the order appealed from, and the Superior Court erred in confirming that order.

The statute (§ 398) directs the court, when the intestate dies leaving no children or any legal representatives of them, to distribute a prescribed portion of the estate to the widow, and the remainder to the parents of the intestate, if any, and if there be no parent, then equally to the brothers and sisters of the whole blood.   It appeared to the court that the intestate died leaving a widow, leaving no issue, and no parents, and that the appellant was his sister of the whole blood.   Upon these facts alone it was the duty of the court to distribute a portion of the estate to the appellant.   But it further appeared to the court that on November 6th, 1863, a county judge of the county of Milwaukee in the State of Wisconsin, upon the petition of the intestate and his wife, passed a decree purporting to give, by authority of the Wisconsin law, to Elizabeth E. Burton, then an infant two years and seven months of age (being the Elizabeth E. B. Potter to whom the Court of

Probate made distribution), the same capacity of inheritance and succession she would have if she had been born the lawful child of the petitioners.   This action of the Wisconsin court is called by the law of that State, and somewhat similar action, authorized by the law of this State, is called by our law, an " adoption."

" Adoption " was never used to express the peculiar incidents of such action prior to 1846, when the States of the United States in which the common law of England is followed began to enact statutes similar to that of Wisconsin and to that of our own State.   Before that time, the meaning of adoption as expressing a legal status was that derived from the Roman law.   The peculiar status or relationship arising from adoption known to Roman law is of a kind unknown to the law of England, and of a kind unknown to the law of this State, certainly until 1864, when the statute referred to (§233) was passed.   Dicey on Conflict of Laws, p. 475.   It may aid the consideration of questions arising under such statutes to note the distinction between adoption as a status existing under the Roman law, and the statutory status which since 1846 has been established by the legislatures of this and some other States retaining the English common law.

Roman adoption, or the act by which the relations of paternity and filiation are recognized as legally existing between persons not so related by nature, derived its original significance mainly from the existence of the *patria potestas*, which was peculiar to Roman citizenship and involved, as between parent and child, relations of paternity and filiation peculiar to Roman law.   A child born in lawful marriage was in the power of its father.   That power includes not only the child born in wedlock, but also the child born to his son and the one born to his son; that is, your son, grandson, great-grandson and other descendants are equally in your power.   Just. Inst. (1876) I, Tit. IX, ¶ 1–3.   Roman adoption, until the legislation of Justinian, was the act by which an ascendant transferred his descendant who was in his power to the power of another ascend-

ant, and thereupon the person so transferred was in the power of the adopting ascendant as well as his actual children. The act was accomplished through prescribed formalities under authority of a magistrate. A person not in the power of an ascendant but free from power, might be adopted by the form of adoption called arrogation. In such case the adopter formally consented that the one to be adopted should become his lawful son and the one to be adopted consented thereto. This change of relation was accomplished originally by the authority of the people assembled in the Comitia, and later was established by an imperial rescript. Under either form the person adopted became, in early Roman law, subject to the *patria potestas* which a Roman father possessed over his descendants. See Just. Inst. I, Tit. II ; Code VIII, 48, 10.

The *patria potestas* which controlled the original meaning of Roman adoption does not exist in this State nor in any State organized on the principles of the English law. It is inconsistent with our fundamental social conditions. With us every man who has reached his majority is free from power. A father's power extends to his children, but not to his other descendants ; and extends to his children only during the minority of each. The difference between a society like ours, based on the principle that each member on reaching his majority is his own master, a responsible unit, with control of each of his own children until and only until the child becomes of age, and a society based on the principle of the *patria potestas*, is organic. With us the legal rights and duties existing between parent and child exist only during the minority of the child ; after that, the duties arising from the natural relation are not legal but moral ; unless by force of statute some specific legal duty is created. Another peculiarity of the Roman law materially affecting the meaning and operation of Roman adoption, was the principle which recognized in children in the power of their father a quasi interest or ownership in his property during his life. Just. Inst. II, Tit. XIX, ¶ 3. And so the mere fact of adoption made the adopted

person, thus subjected to the power of the adopted father,
an heir of the patrimony and as such entitled to succeed to
the inheritance in case of intestacy.    Just. Inst. III, Tit. I,
¶¶ 1, 2.    With us a child has no interest in his father's
property, which in case of intestacy is taken possession of
by the law and distributed among those related to the in-
testate by blood according to prescribed rules.    The stat-
utes, differing widely in their terms, which have been
passed in recent years for the purpose of establishing
between a minor and one not his parent, the legal obliga-
tions and duties attached to the natural relation of parent
and child, as' well as for conferring upon any person a
capacity, more or less limited, of succeeding to the prop-
erty of one not his parent, must be understood and applied
in accordance with the terms of each statute in view of
our own conditions, and their meaning and effect are not
necessarily controlled by the analogies of a Roman adop-
tion.

What the Wisconsin law was at the time of the decree
in question is specially found by the Superior Court.    This
finding is not in accord with the fact ; the Act of 1862
having apparently been inadvertently overlooked both by
court and counsel.    But, under General Statutes, § 697, all
courts are to take judicial notice of the public statutes of
the several States of the United States, as printed by
authority, and it is therefore our duty to consider the stat-
utes of Wisconsin as they really were.    *Fourth National
Bank* v. *Francklyn*, 120 U. S. 747, 7 Sup. Ct. Rep. 757.

Their provisions in 1863 were substantially as follows :
Any inhabitant of the State could petition a county judge
for leave to adopt a child not his own by birth (the
petitioner and child residing in that county).    Such peti-
tion must be accompanied or followed by a consent to the
adoption :  (1) of the parent of the child, if alive and a res-
ident of the State of Wisconsin, or (2) if no parent be liv-
ing, or, if the living parent is a nonresident of Wisconsin,
of the child's legal guardian or next of kin in the State, or of
some suitable person appointed by the judge to act as next

friend of the child, and give or withhold such consent. These jurisdictional facts existing, the county judge is empowered to judicially find that the petitioner is able to bring up and educate the child, and that it is fit and proper that such adoption shall take effect, and upon finding these facts, is empowered to decree the adoption of such child, that is, that such child shall be deemed and taken, to all legal intents and purposes, as the child of the petitioner. The meaning and effect of the statutory adoption and decree is defined by the statute as follows: 1. As affecting the legal rights and duties of parent and child, the adopted child shall be deemed, for the purposes of custody of his person, of power to enforce obedience, and other legal consequences attached to the natural relation of parent and child, as a child of the adopting parent born in lawful wedlock; the natural parent of the child being, by such decree, deprived of all legal rights as respects such child, and the child being freed from all legal obligations as respects his natural parent. 2. As affecting the laws of inheritance and distribution and the capacity of the child to take property in pursuance of such laws, the adopted child shall be deemed and taken, for the purposes of inheritance and succession by him, to be the child of his adopting parent.

It is true, as claimed, that courts in applying statutes of this kind have held that the power to so adopt minor children is a creation of the statute unknown to the common law, that the statutory mode prescribed is the measure of the power, and that an adoption is invalid unless made in pursuance of the essential requirements of the statute. *Matter of Thorne*, 155 N. Y. 140, 49 N. E. 661; *In re Johnson*, 98 Cal. 531, 33 Pac. 460; *Shearer* v. *Weaver*, 56 Iowa, 578, 9 N. W. 907; *Tyler* v. *Reynolds*, 53 Iowa, 146, 4 N. W. 902; *Long* v. *Hewitt*, 44 Iowa, 363; *In re Humphrey*, 137 Mass. 84; *In re Estate of McCormick*, 108 Wis. 234, 84 N. W. 148; *Furgeson* v. *Jones*, 17 Or. 204, 20 Pac. 842; *Watts* v. *Dull*, 184 Ill. 86, 56 N. E. 303; *Taber* v. *Douglass*, 101 Me. 363, 64 Atl. 653.

But the claim that this principle applies to the present

case—that the record of the Wisconsin court shows upon its face that in the act of adoption the court did not follow the requirements of the statute and did that which by the Wisconsin law it was not empowered to do—is not sustained. The Wisconsin law, namely, chapter 49 of the Revision of 1858, with its second section amended by the Act of 1862, was in force scarcely two years when it was deemed by the legislature inadequate and was materially altered. Whether or not the alteration was made because the legislature deemed that law too arbitrary, it was the law when this decree was passed, and the decree is plainly within the jurisdiction conferred by the law.

A further claim is made, that notwithstanding the Wisconsin court acted within its jurisdiction, yet it appears that the parents of the adopted child were living at the time of the decree and that they had no notice by personal service or otherwise to appear and be heard, and therefore the decree is upon its face void by force of the settled principle that a personal judgment cannot be enforced against a defendant who neither appeared nor had legal notice to appear in the action. We do not think that this principle can be applied so as to render the decree, in so far as it affects the capacity of the infant to share in the distribution of the estate of this intestate, void upon its face. A father or parent has certain legal rights in respect to his children during minority. But these rights are not absolute rights, they may be forfeited by his own conduct, they may be modified or suspended against his will by action of the court, they may to a certain extent be transferred by agreement to another, but they cannot be destroyed as between himself and his child, except by force of statute. *Johnson* v. *Terry*, 34 Conn. 259, 263. If the parents of Elizabeth E. Burton had a right to contest the validity of this decree in so far as it deprived them of their legal parental rights, it does not follow necessarily that after those rights have terminated with the majority of their child, the decree giving to the infant a statutory capacity of inheritance from a stranger, made in pursuance of jurisdiction conferred

and in the manner prescribed by statute, must be held void because the child's parents were not served with notice to appear and did not in fact appear and did not in fact consent to the action of the court.   We are unable to affirm, upon the case as presented, that the decree of the Wisconsin court, authorized by statute and rendered in pursuance of the requirements of the statute, giving to Elizabeth E. Burton the defined statutory status as an adopted child of the intestate for the purposes of inheritance and succession, is void because the parents of the child might have successfully contested the validity of the decree in so far as it affected their legal rights as parents.

A still further claim is made that, on general principles of jurisprudence, the court in Wisconsin was without jurisdiction to change the status of Elizabeth E. Burton, because neither her domicil nor that of her natural parents was in that State.

The petition for her adoption stated that John O. Noxon and his wife were inhabitants of Wisconsin ; that Elizabeth E. Burton was a child between two and three years of age, who had been brought into the State by her parents more than eight months before, and for the last preceding seven months had inhabited and resided in the family of the petitioner in Milwaukee ; and that her parents had left the State more than six months previously and had not since resided therein, being at the date of the petition in parts unknown.   Assuming, as we should, in support of the judgment, that these allegations were found true by the county judge, they fall short of showing that the child had gained for itself a Wisconsin domicil.

The State, however, may create the status of adoption in the case of an infant actually within its limits, and for that purpose it is only necessary that the petition of adoption should be brought by a domiciled inhabitant of the State in which it is preferred, when the child is within its territorial limits and in need of its protection, provided this protection can be reasonably afforded by transferring the

child to the charge of him who seeks to assume toward it the responsibilities of a parent. *Stearns* v. *Allen*, 183 Mass. 404, 67 N. E. 349; Minor on Conflict of Laws, p. 222. Wisconsin had a statute authorizing such a proceeding, although its natural parents had no domicil there and the child had not for itself acquired a domicil. The effect of an adoption decreed under its provisions, as respects the natural parents, it is not necessary, for the purposes of this cause, to consider. See *Schiltz* v. *Roenitz*, 86 Wis. 31, 42, 56 N. W. 194, 21 L. R. A. 483.

There is nothing in the policy of this State, in reference to the relation of parent and child, which could interfere with our giving effect to the Wisconsin decree, as respects the rights of the petitioners for the adoption, after they transferred their domicil to Connecticut, or of those claiming under them. We have statutes of a similar nature, and fully recognize the status of an adopted child. *Ross* v. *Ross*, 129 Mass. 243, 267. Those who have once legally made such an adoption cannot shake off the relation by a change of domicil. Whether the child adopted, on reaching full age, could reclaim its original domicil, is a question not raised by the facts before us.

To John O. Noxon, therefore, after his removal to this State, as well as while an inhabitant of Wisconsin, Elizabeth E. Burton, now Mrs. Potter, stood in the position of a child born in lawful wedlock.

It is therefore unnecessary to consider whether the court erred in thinking the principles of equitable estoppel might have justified the court in ordering distribution to Mrs. Potter, even if the record of the Wisconsin court were an absolute nullity. The record was valid; the court so found by its judgment; and a judgment cannot be set aside because the court in a finding for appeal may state an insufficient reason for a sound conclusion.

It was further contended that the Wisconsin statute only authorizes proceedings of adoption before a county judge, whereas the reasons of appeal filed in the Superior Court state, and the court has found thereon, that the

proceedings under the statute took place in the County Court.

With respect to this claim it is enough to say that the record of these proceedings is made part of the finding, and that while the decree was entitled in and under the seal of the County Court, it was made on a petition addressed to the county judge, and is signed by him as such. It is to be presumed, after this lapse of time, that the county judge thus disposed of the cause in accordance with the law and practice of his State.

There is no error.

In this opinion the other judges concurred.