Bell, J.
The petitioner urges that the Probate Court of Cuyahoga County lacked jurisdiction to award custody, by way of guardianship, of Donald, for the reason that at all times material to this controversy his domicil was Louisiana. To reach this conclusion she advances several “rules” of domicil. Briefly summarized, they are:
1. A married woman takes the domicil of her husband by operation of law.
2. A person’s domicil is not changed while he is in military service, unless he has most clearly and unequivocally shown an intent to change it. Donnie R. Fore, the father, was admittedly domiciled in Louisiana prior to his enlistment in 1941. Since he remained in the service until his death, this principle, together with “rule” 1, ascribes to the parents of Donald a Louisiana domicil during their entire lives.
3. An infant’s domicil is that of his parents, particularly that of his father. This domicil is thrust upofi the child “by operation of law,” irrespective of the place of birth, of the place of abode, or of any actual choice. Following “rules” 1, 2 and 3, we would be forced to the conclusion that Donald was domiciled in Louisiana until the moment of his father’s death.
The judgment of the Court of Appeals refers to a fourth rule, operative immediately upon the death of the parents:
4. On the death of both parents, a minor takes the domicil of his grandparents. Since the petitioner is admittedly domiciled in Louisiana, this principle is urged upon us to declare Louisiana as the domicil of Donald.
Working with these “rules” and with the legal conclusion that the court of a minor’s domicil has exclusive jurisdiction *366 to award custody of the minor, the majority of the Court of Appeals concluded that Ohio through its courts lacked the power to determine the custody of Donald by appointing a guardian for him.
Although, as a matter of argument, such a conclusion might dispose of the question here under consideration, it could not do so without leaving some serious problems unanswered. In the first place, we are not convinced that these broad statements are given the universal application as contended by the petitioner. See Cook, The Logical and Legal Bases of the Conflict of Laws, 33 Yale Law Journal, 457. But conceding that they should be accorded full validity, we are faced with these questions:
What was the domicil of the mother during the hours she survived her husband (if, in fact, she did survive him) ? And did her son take that domicil?
The domicil of which set of grandparents, paternal or maternal, is the child’s domicil after the death of his parents?
In Stumberg, Conflict of Laws, 49, it is stated that the domicil of a child is that of his grandparents, if he in fact lives with them. See, also, Lamar, Exr., v. Micou, Admx., 112 U. S., 452, 28 L. Ed., 759, 5 S. Ct., 221.
It is undisputed in this case that Donald has never lived with the petitioner.
Conceding further that “rule” 4 above is a correct statement of the general law, and that a child upon the death of his parents takes the domicil of his grandparents, we may well ask whether a person, other than a grandparent, with whom the child “in fact lives” can change his domicil. In Loftin v. Carden, 203 Ala., 405, 83 So., 174, it was alleged and proved, in a controversy between two petitioners for the guardianship of a two-year-old infant, that both its parents and natural guardians were dead, and that the child had been removed into Dale County, at the time the bodies of its parents were taken there for burial, and had remained there in the custody and control of the successful petitioner up to the time of filing the petition. The court in that case said:
“In this case both the father and mother of the infant were dead, and the infant was not of sufficient age to choose a residence or domicile. The appellee in this case being the maternal *367 aunt of the infant, and having the legal custody and control of it, could certainly choose the residence or domicile of the infant which could not choose its own, in the absence of both father or mother or other person having a better right to the custody and control of the infant. So, if it should be conceded that the residence of the infant was ever in Bullock County, the undisputed evidence shows that that residence was changed to that of Dale County when the probate court of that county assumed jurisdiction and appointed a guardian for the infant.”
If the reasoning of the Loftin case is followed, it may well be that the domicil of Donald is in Ohio by virtue of his Cleveland home with the respondent.
However, we do not believe that the welfare of a child turns on such verbalisms. Unless compelled by some Ohio statute to find to the contrary, we are of the opinion that the Ohio court had the inherent jurisdiction to determine the custody of Donald, irrespective of his domicil. An award of custody is not simply an adjudication of personal rights of individuals in and to a minor; it is a conclusion of what is best for the welfare of the child. See Stumberg, The Status of Children in the Conflict of Laws, 8 University of Chicago Law Beview, 42, 55, where it is said:
“Custody proceedings do not have as their purpose creation or recognition of an aggregate of legal relations, but rather a judicial determination of conflicting claims to the physical control and care of the child. These claims would normally be incidents of the parent-child relationship, and under ordinary circumstances there would be no occasion at all for their assertion in court. It is when the circumstances become abnormal, as where the parents are separated, or there is a divorce, or the parents are allegedly unfit, or are dead, that a situation for judicial cognizance- arises. If the case were merely one for determining the merits of the conflicting claims as between the immediate parties, 'there would be no particular reason for departing from usual concepts of jurisdiction in personam; but the very abnormality of the situation brings into play the further idea that in making his decision, the trial judge should be guided not so much by legalistic formulae as by considerations which have a bearing upon the ultimate interests of the child. Actu *368 ated by this thought, a number of courts have held that the interests of the child can be adequately protected at the place where it actually resides and that jurisdiction exists there even though that place may not be the child’s technical domicil.”
Viewed thus, jurisdiction to reach this conclusion rests on the sovereignty which each state has in standing in parens patriae toward children within its borders. This jurisdiction should not be abdicated simply because such a child has a technical domicil in some other state.
Perhaps at one time in the history of this country — before the days of easy and fast transportation — the domiciliary court was the one best suited' to determine custody. Lanning v. Gregory (1902), 100 Tex., 310, 99 S. W., 542. It was in the domiciliary state that a family lived, grew and died. It was in that state that the child’s interests were centered. However, domicil was then the basis of jurisdiction, not because of anything inherent in the word, but because it was the easiest way to describe the state which was most closely connected with the welfare of the child.
Such is not necessarily the situation today. Easy modes of transportation and a plentitude of jobs have divided families among several states. Domicil no longer retains its original impact. In custody cases, courts now recognize that the .domiciliary court does not have sole jurisdiction, and many older precedents have been overruled. Thus in Wick v. Cox (1948), 146 Tex., 489, 208 S. W. (2d), 876, the court held:
“The principle underlying jurisdiction of the subject matter in child custody cases is the welfare of society, primarily as evidenced by the welfare of the child, but involving also the right, and, for that matter, the duty, of a state, being the relatively independent sovereign that it is, to look after the welfare of individuals within its borders # *
Part of the genius of the law is that old “rules” give way to new ones which better reflect the basic principles which under-girded the former. The basic principle in custody cases is that the state seeking to exercise such jurisdiction must be so closely connected with the welfare of the child that it is in furtherance of his interests that his custody be determined in that state. Obviously, such state may be far beyond an assigned domicil.
*369 Applying this basic principle to the case before us, it becomes clear that Ohio’s interest is sufficient to uphold its exercise of jurisdiction. The only connection between Donald and Louisiana rests on a tenuous and a technical idea of domicile. His connections with Ohio, however, are those flowing from an actual residence within Cuyahoga County. We are of the opinion that this residence was sufficient to give Ohio the inherent power to decide the question of Donald’s custody.
In Finlay v. Finlay, 240 N. Y., 429, 148 N. E., 624, 40 A. L. R., 937, Judge Cardozo said:
“The jurisdiction of a state to regulate the custody of infants found within its territory does not depend upon the domicile of the parents. It has its origin in the protection that is due to the incompetent or helpless. * * # [Cases cited.] For this, the residence of the child suffices, though the domicile be elsewhere * *
Indeed, the majority of American cases appear to go further and tend to support jurisdiction if the child is, in fact, present within the state. Thus it is said in 4 A. L. R. (2d), 16:
“Where there is no outstanding judicial award of custody by a foreign court the courts, are nearly unanimous in holding that even though the children may be domiciled without the state, power in the court exists to make an award of custody of children present in the state in furtherance of the welfare of the children. ’ ’
However, the facts of the instant case do not require us to go so far.
We do not, of course, suggest that the location of the child’s domicil is unimportant in deciding the merits of a custody case. Indeed it may be of prime importance in a decision as to which of two competing persons is to be granted the custody. However, these considerations go to the merits of the case and not to jurisdiction, which was the basis of the Court of Appeals judgment.
A case very similar in its facts to the present one is People, ex rel. Noonan, v. Wingate, 376 Ill., 244, 33 N. E. (2d), 467. There a habeas corpus action was brought in Illinois by the paternal grandmother to obtain custody of a minor from residents of Illinois who had been caring for the minor. Both *370 parents were deceased, the mother having died first. At the time of his death, the father was domiciled in Massachusetts even though he was working in Georgia. The grandmother, who also was domiciled in Massachusetts, was appointed guardian by a Massachusetts court. In the habeas corpus action the grandmother contended that the child was domiciled in Massachusetts, and that that state alone had jurisdiction to determine custody. In disposing of this claim, the Supreme Court of Illinois said:
“The jurisdiction of a state to regulate the custody of infants within its territory does not depend upon the domicile of the child. It arises out of the power that every sovereignty possesses as parens patriae to every child within its borders to determine its status and custody that will best meet its needs and wants. * * * The residence within the state suffices even though domicile may be in another jurisdiction. ’ ’
For similar rulings in other states, see Stearns, Admr., v. Allen, 183 Mass., 404, 67 N. E., 349, 97 Am. St. Rep., 441; Rizo v. Burruel, 23 Ariz., 137, 202 P., 234, 19 A. L. R., 823; Taylor v. Collins, 172 Ark., 541, 289 S. W., 466; Appeal of Woodward, 81 Conn., 152, 70 A., 453; Hopkins v. Gifford, 309 Ill., 363, 141 N. E., 178; Kenner v. Kenner, 139 Tenn., 211, 201 S. W., 779, L. R. A. 1918E, 587; Sheehy v. Sheehy, 88 N. H., 223, 186 A., 1, 107 A. L. R., 635; White v. White, 77 N. H., 26, 86 A., 353; Goldsmith v. Salkey (Tex. Civ. App.), 115 S. W. (2d), 778.
The foregoing authorities establish only that Ohio has the inherent authority to decide the question of custody. To the extent that the statute law has limited that authority, we must, of course, follow the mandate of the Legislature. Petitioner relies on Section 2111.02, Revised Code, for such a limitation. That section, so far as pertinent herein, provides as follows:
“When found necessary, the Probate Court on its own motion or an application by any interested party shall appoint a guardian of the person, the estate, or both, of a minor, incompetent, habitual drunkard, idiot, imbecile, or lunatic or a guardian of the estate of a confined person; provided the person for whom the guardian is to be appointed is a resident of the county or has a legal settlement therein. ”
It is urged by the petitioner that the word, “resident,” *371 should be interpreted as synonymous with “domicil,” and that in Ohio the Probate Court can not appoint a guardian for a person not domiciled in Ohio unless he has a “legal settlement” in Ohio.
We do not ascribe this meaning to the word, “resident,” as it is used in this section. Rather, we believe it is to be given its ordinary meaning, that of indicating simply a place of dwelling within the state. We recognize that “residence” is often interpreted as the equivalent of “domicil.” .See Reese and Green, That Elusive Word, “Residence,” 6 Vanderbilt Law Review, 561. Such an interpretation here, however, would unnecessarily restrict the power of our Probate Court to deal with minor children. It would result in some instances in depriving the court of the power to determine custody of a child who has no family in another state and who has his only settled connection in Ohio — deprive it of the power simply because the surviving parent died domiciled some place other than Ohio. We do not believe that the General Assembly had any such intention when it enacted Section 2111.02.
This interpretation of the word is supported when we note the other persons to whom this section applies — the “incompetent, habitual drunkard, idot, imbecile, or lunatic.” Interpreting “residence” as the equivalent of “domicil” would prevent our courts from appointing a guardian of such a person, even though he was present and living in Ohio, if the technical rules of domicil happened to make another state his domicil.
The final claim of the petitioner is that the Full Faith and Credit Clause of the Constitution of the United States (Section 1, Article IV) requires us to give such credit to the Louisiana decree of “tutorship” as will preclude us from giving any effect to the order of the Probate Court of Cuyahoga County. The Louisiana decree was entered without jurisdiction over the person of the respondent or the child. We are, therefore, not required to give such effect to that decree as to require the respondent to deliver the child to the petitioner. This is the philosophy underlying May v. Anderson, 345 U. S., 528, 97 L. Ed., 1221, 73 S. Ct., 840. See, also, Cunningham v. Cunningham, 166 Ohio St., 203, 141 N. E. (2d), 172; New York, ex rel. Halvey, v. Halvey, 330 U. S., 610, 91 L. Ed., 1133, 67 S. Ct., 903.
*372 Our conclusion from the foregoing is that the Probate Court of Cuyahoga County did have jurisdiction to enter its decree of guardianship, and that the Full Faith and Credit Clause of the United States Constitution does not preclude our giving effect to that decree. .It follows that such jurisdiction of the Probate Court is plenary and exclusive. Shroyer, Gdn., v. Richmond, 16 Ohio St., 455; In re Clendenning, 145 Ohio St., 82, 60 N. E. (2d), 676.
The judgment of the Court of Appeals is, therefore, reversed and final judgment rendered for the respondent.
Since the error which is the basis of this reversal is apparent from the entry of the Court of Appeals, it is not necessary to our decision that there be a bill of exceptions. The motion of appellee to dismiss the appeal is, therefore, overruled.

Judgment reversed.

Weygandt, C. J., Zimmerman, Stewart, Matthias and Herbert, JJ., concur.-
Taft, J., concurs in paragraph one of the syllabus and in the judgment.